**BUCHALTER**
A Professional Corporation
DANA HOBART (SBN: 125139)
MATTHEW DRENAN (SBN: 302477)
DANIEL C. SILVA (SBN: 264632)
BRIAN SHAW (SBN: 311613)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: dhobart@buchalter.com
Email: mdrenan@buchalter.com
Email: dsilva@buchalter.com
Email: bshaw@buchalter.com

Attorneys for Plaintiff
VIZIO, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIZIO, INC.,<br><br>       Plaintiff,<br><br>      vs.<br><br>DEDICATED LOGISTICS, LLC;<br>DEDICATED LOGISTICS<br>SERVICES, LLC; TOTAL<br>LOGISTICS I, LLC; AND DOES 1-10,<br>INCLUSIVE,<br><br>       Defendant. | Case No. 8:23-cv-00519 HDV (JDEx)<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**(1)  VIOLATION OF CALIFORNIA PENAL CODE § 496(a);**<br>**(2)  CONVERSION;**<br>**(3)  BREACH OF CONTRACT;**<br>**(4)  BREACH OF CONTRACT THIRD-PARTY BENEFICIARY, CIV. CODE § 1559;**<br>**(5)  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(6)  NEGLIGENT SUPERVISION, HIRING, AND RETENTION;**<br>**(7)  FRAUD;**<br>**(8)  NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;**<br>**(9)  INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; AND**<br>**(10) IN THE ALTERNATIVE, VIOLATION OF THE CARMACK AMENDMENT TO THE INTERSTATE COMMERCE ACT, 49 U.S.C. § 14706**<br><br>**DEMAND FOR JURY TRIAL** |

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

BN 78899243v1

1

SECOND AMENDED COMPLAINT

Case No. 8:23-cv-00519 HDV (JDEx)

Plaintiff VIZIO, Inc. ("Vizio") complains and alleges against defendants Dedicated Logistics, LLC;[1] Dedicated Logistics Services, LLC; and Total Logistics I, LLC (collectively, "Defendants" or "Dedicated Logistics") as follows:

## NATURE OF ACTION

1.     This is an action for violation of California Penal Code section 496(a); conversion; breach of contract; breach of contract of a third-party beneficiary; breach of the implied covenant of good faith and fair dealing; negligent supervision, hiring, and retention; fraud; negligent interference with prospective economic relations; intentional interference with prospective economic relations; and, in the alternative, violation of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. section 14706. Specifically, Dedicated Logistics stole and concealed the theft of Vizio's product on no fewer than 33 separate occasions during transport from a warehouse to various retail distribution centers or hubs, and then fraudulently modified the related bills of lading and electronic records to reflect a lower quantity of product than what Dedicated Logistics originally received from Vizio. Vizio seeks damages, attorneys' fees, costs, treble damage, punitive and exemplary damage, and pre-judgment and post-judgment interest. The basis for this Court's jurisdiction is 28 U.S.C. section 1332(a).

## THE PARTIES

2.     At all times relevant hereto, Vizio was and is a corporation incorporated in California with its principal place of business in Irvine, California.

3.     At all times relevant hereto, up to and including October 30, 2021, Dedicated Logistics, Inc. was a corporation incorporated in Minnesota with its principal place of business in Oakdale, Minnesota. On or around October 30, 2021, Dedicated Logistics, Inc. converted to Dedicated Logistics, LLC. On information and

---

[1] Effective October 30, 2021, Dedicated Logistics, Inc. converted to Dedicated Logistics, LLC. Under Minnesota law, "[a]n organization that has been converted . . . is for all purposes the same entity that existed before the conversion." Minn.Stat. § 302A.691, subd. 1; *see, e.g.*, *Delamater v. Anytime Fitness, Inc.*, 722 F. Supp. 2d 1168, 1176 (E.D. Cal. 2010) (observing "under Minnesota law, Anytime Fitness LLC is deemed to be the same entity as Anytime Fitness, Inc. . . . .").

belief, Dedicated Logistics, LLC's sole member is Steve Magruder, who is a resident of and domiciled in Minnesota.

4.     On information and belief and at all times relevant hereto, Dedicated Logistics Services, LLC's sole member is Thomas Wintz, who is a resident of and domiciled in Minnesota.

5.     On information and belief and at all times relevant hereto, Total Logistics I, LLC's members are residents of and domiciled in Minnesota.

6.     Vizio does not currently know the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by fictitious names in conformance with Local Rule 19-1. Vizio will amend this complaint to state the true names and capacities of the fictitiously named defendants when those names are ascertained. Vizio is informed and believes and thereon alleges that each of the fictitiously named defendants was legally responsible in some manner for the events and damages alleged in the complaint.

7.     As to all claims alleged herein, each defendant was the agent and employee of each of the other defendants.

8.     As to all claims alleged herein, there is interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control among Defendants amounting to an integrated enterprise.

9.     As to all claims alleged herein, there exists a unity of interests and ownership among Defendants and Defendants' members and beneficial owners, Steve Magruder and Thomas Wintz, and if the acts by one Defendant were treated as acts of that entity alone, an inequitable result would follow. Defendants' website identifies Dedicated Logistics, LLC as a "Member of Total Logistics, LLC." But Defendants' Notice of Interested Parties (Docket No. 22) identifies Total Logistics I, LLC as Dedicated Logistics, LLC's "Parent Company." On information and belief, Defendants, and their members and beneficial owners Steve Magruder and Thomas Wintz, acting through Total Logistics I, LLC, intentionally undercapitalized

Dedicated Logistics, LLC and Dedicated Logistics Services, LLC to escape liability for potential judgments. Consequently, adherence to the fiction of the separate existence of Defendants would sanction a fraud or promote injustice.

10. As to all claims alleged herein, and on information and belief, in furtherance of the false representations Dedicated Logistics made to Vizio, Defendants, and each of their members and beneficial owners including Steve Magruder and Thomas Wintz, conducted financial transactions with each other and across their unity of interests and ownership. The financial transactions that Defendants conducted were made, on information and belief, without adequate consideration or any reasonably equivalent value in exchange, or otherwise made with the intent to maintain an unreasonably small amount of capital. On information and belief, Defendants conducted these financial transactions with actual intent to hinder or delay Dedicated Logistics, LLC's ability to satisfy potential judgments, or otherwise with the actual intent to undercapitalize Dedicated Logistics, LLC while, at the same time, retaining full, shared control of each Defendant's assets, financial accounts, operations, and employees within the unity of interests and ownership among Defendants, and each of their members, beneficial owners including Steve Magruder and Thomas Wintz, and other insiders and affiliated entities or persons.

## JURISDICTION AND VENUE

11. The jurisdiction of the Court is founded on diversity of citizenship pursuant to 28 U.S.C. section 1332(a): Vizio is a citizen of California for purposes of diversity jurisdiction; Dedicated Logistics, LLC, Dedicated Logistics Services, LLC, and Total Logistics I, LLC are citizens of Minnesota for purposes of diversity jurisdiction because, on information and belief, their members and beneficial owners are citizens of Minnesota. Additionally, Vizio's damages exceed $75,000.00, exclusive of interest and costs.

12. Venue is proper in the Central District of California pursuant to 28 U.S.C. section 1391(b)(2) because the events giving rise to the claim occurred in the

Central District of California—specifically, Orange County and Los Angeles County.

13. The Court has personal jurisdiction over Defendants and DOES 1-10 because they (1) are present, doing business, or residing in the Central District of California (namely, Orange County and Los Angeles County), (2) committed tortious acts and violated Vizio's rights in the Central District of California (namely, Orange County and Los Angeles County), and (3) knew or should have known that such conduct would cause injury to Vizio in the State of California.

## GENERAL ALLEGATIONS

14. Vizio is a consumer electronics company that offers televisions, soundbars, and home entertainment accessories to consumers as well as content on its SmartCast platform. Vizio's products are available for purchase at various retail stores throughout California.

15. Vizio engaged the services of Dedicated Logistics to transport Vizio's product (for example, televisions and soundbars) from a warehouse in Los Angeles County to other locations in California. Each trip between the warehouse and the trip destinations was entirely intrastate; that is, each originated and terminated in California.

16. During each trip, Dedicated Logistics received Vizio's product at a warehouse and delivered it to the above-referenced destinations.

17. A bill of lading was issued for each transfer of Vizio's product and it identified, among other things, the "ship from" and "ship to" addresses, the carrier name (here, Dedicated Logistics), the number of packages, weight, and commodity descriptions.

18. At all times relevant hereto, Vizio owned the product transported by Dedicated Logistics.

19. Starting on or around January 28, 2021, and continuing through on or about December 21, 2022, Dedicated Logistics stole, concealed, withheld, and aided in stealing, concealing, or withholding at least $2,426,805.07 worth of product from

Vizio over the course of 33 trips from the warehouse to various retail distribution centers or hubs within California. Specifically, Dedicated Logistics received Vizio's product from the warehouse (to be delivered to various retail distribution centers or hubs); however, before the product was delivered to the various retail distribution centers or hubs, Dedicated Logistics stole, concealed, withheld, and aided in stealing, concealing, or withholding, a significant portion of each of the 33 deliveries.

20.     In furtherance of stealing, concealing, withholding, and aiding in stealing, concealing, and withholding Vizio's product, Dedicated Logistics fraudulently modified the relevant bills of lading for Vizio's product to reflect a lower quantity of product than what Dedicated Logistics received at the warehouse. Dedicated Logistics modified the bills of lading to conceal its thefts from Vizio.

21.     In furtherance of stealing, concealing, withholding, and aiding in stealing, concealing, and withholding Vizio's product, Dedicated Logistics also modified the relevant electronic records related to each delivery of Vizio's product to reflect lower quantities than what Dedicated Logistics received at the warehouse in a further attempt to conceal its thefts of Vizio's product.

22.     As of the date of this submission, Vizio is aware of at least $2,426,805.07 worth of product that was stolen, concealed, and withheld by Dedicated Logistics when it transported Vizio's product from a California warehouse to various retail distribution centers or hubs within California.

## DEDICATED LOGISTICS' EMPLOYMENT OF DRIVERS

23.     At all relevant times hereto, Dedicated Logistics, at the direction of its officers, directors, or managing agents, exercised significant control over its drivers.

24.     On information and belief, Dedicated Logistics advised its drivers of the pickup and drop-off locations, including through the use of bills of lading.

25.     On information and belief, Dedicated Logistics' drivers are subject to its control while performing delivery services on behalf of and at the direction of Dedicated Logistics.

26.     On information and belief, Dedicated Logistics retains the right to direct and does indeed direct how the work of its drivers shall be done as well as the result to be accomplished.

27.     Dedicated Logistics retains and exercises the right to control all aspects of its drivers' work, including, but not limited to: (1) timing of receipt and delivery of product; (2) location of product receipt and delivery; (3) the amount and type of freight to be transported; (4) the right to set prices for transportation without driver input; (5) the right to modify charges to its customers; (6) the right to control various aspects of the manner and means by which drivers complete their deliveries; (7) the right to require drivers to use only specific types of trucks; and (8) salary and other compensation for its drivers.

28.     At all relevant times, Dedicated Logistics' drivers were acting in the scope of their employment (namely, transporting product from warehouses in California to destinations in California) when they stole, knowingly permitted others to steal, recklessly failed to prevent others from stealing, and concealed the loss of at least $2,426,805.07 worth of product from Vizio. Indeed, Dedicated Logistics' drivers' repeated thefts were an outgrowth of the transportation services provided to Vizio.

## FIRST CAUSE OF ACTION

### (Violation of Penal Code section 496(a))

(Against Dedicated Logistics and DOES 1-10)

29.     Vizio re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 28, inclusive, as though set forth fully herein.

30.     Vizio is informed and believes and thereon alleges that Dedicated Logistics diverted Vizio's product to itself, to its employees, or to others, as further set forth above, in an amount of at least $2,426,805.07. Dedicated Logistics, its employees, its driver, and its agents, stole, concealed, withheld, and aided in stealing,

concealing, and withholding Vizio's product when it knowingly and intentionally failed to deliver Vizio's product and fraudulently modified the bills of lading and related electronic records to reflect lower quantities of product transported. Dedicated Logistics' modifications of the bills of lading and related electronic records concealed thefts from at least 33 deliveries of Vizio's product.

31.    Dedicated Logistics knowingly stole, concealed, withheld, or aided in stealing, concealing, or withholding Vizio product and, thus, has violated California Penal Code section 496(a) on a continuing basis.

32.    Vizio has been injured as a direct and proximate cause of Dedicated Logistics' violations of California Penal Code section 496(a) in an amount of at least $2,426,805.07. Further, Vizio continues to be injured by Dedicated Logistics' failure and refusal to return Vizio's product, or to compensate Vizio for stealing, concealing, withholding, and aiding in stealing, concealing, and withholding Vizio's product.

33.    Dedicated Logistics' actions in violation of California Penal Code section 496(a) entitle Vizio to bring this action and recover three times the amount of actual damages sustained by Vizio, in addition to costs of suit and reasonable attorneys' fees. *See* Cal. Penal Code § 496(c).

## SECOND CAUSE OF ACTION

### (Conversion)

(Against Dedicated Logistics and DOES 1-10)

34.    Vizio re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 33, inclusive, as though set forth fully herein.

35.    At all times relevant herein, Vizio was, and still is, the owner of the product that was stolen, concealed, and withheld by Dedicated Logistics, in an amount of at least $2,426,805.07.

36.    Dedicated Logistics stole, concealed, withheld, and aided in stealing, concealing, and withholding Vizio's product, in an amount of not less than

$2,426,805.07, during scheduled transports from warehouses in California to the agreed upon destinations in California.

37.    Vizio did not permit or allow Dedicated Logistics to steal, conceal, withhold, or aid in concealing and withholding its product.

38.    Vizio has been injured as a direct and proximate cause of Dedicated Logistics' conversion in an amount of at least $2,426,805.07 (the value of the converted product).

## THIRD CAUSE OF ACTION

### (Breach of Contract)

(Against Dedicated Logistics and DOES 1-10)

39.    Vizio re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 38, inclusive, as though set forth fully herein.

40.    Dedicated Logistics entered into written agreements with Vizio on the following dates: January 28, 2021; March 10, 2021; April 19, 2021; April 22, 2021; April 27, 2021; May 3, 2021; May 10, 2021; May 12, 2021; May 17, 2021; July 12, 2021; July 22, 2021; August 31, 2021; September 14, 2021; September 20, 2021; October 21, 2021; November 3, 2021 (two); November 8, 2021 (two); November 15, 2021; November 16, 2021; November 30, 2021; December 14, 2021; December 22, 2021; January 18, 2022; February 2, 2022; March 10, 2022; March 22, 2022; March 29, 2022 (three); April 12, 2022; and December 21, 2022.

41.    Each written agreement was identified as a "Non-Negotiable Bill of Lading." True and correct copies of each of the foregoing Non-Negotiable Bills of Lading between Dedicated Logistics and Vizio are attached hereto as Exhibit A, which are fully incorporated herein by reference (the "Bills of Lading").

42.    Pursuant to each Bill of Lading, Dedicated Logistics agreed, among other things, to transport Vizio's product from warehouses in California to destinations in California.

43. Pursuant to each Bill of Lading, Dedicated Logistics agreed to transport specific quantities of Vizio's product from warehouses in California to destinations in California.

44. Pursuant to each Bill of Lading, Dedicated Logistics agreed to transport Vizio's product to destinations in California within a specified "delivery window."

45. Within each Bill of Lading, Dedicated Logistics is specifically identified as the "Carrier."

46. Dedicated Logistics breached each Bill of Lading in several ways, including, but not limited to: (a) failing to transport Vizio's product from warehouses in California to the agreed upon destinations in California; (b) failing to transport the specific quantities of Vizio's product identified in each Bill of Lading; (c) failing to deliver the specific quantities of Vizio's product within the "delivery window[s]" identified in each Bill of Lading; and (d) stealing, concealing, withholding, and aiding in stealing, concealing, and withholding Vizio's product in transit from warehouses in California to the agreed upon destinations in California.

47. Dedicated Logistics' breaches of each Bill of Lading have caused damage, and are continuing to cause damage, to Vizio and were a substantial factor in causing financial, reputational, economic, and non-economic harm to Vizio.

48. Vizio is entitled to a monetary award of damages to be determined at trial, including interest accruing at the legal rate.

## FOURTH CAUSE OF ACTION

**(Breach of Contract—Third-Party Beneficiary (Civ. Code § 1559)**

(Against Dedicated Logistics and DOES 1-10)

49. Vizio re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 48, inclusive, as though set forth fully herein.

50. Dedicated Logistics entered an agreement with Vizio's transportation logistics manager, Transplace Texas, LP, a Texas limited partnership ("Transplace")

on or about January 14, 2021 (the "Dedicated Logistics/Transplace Agreement"). A true and correct copy of the Dedicated Logistics/Transplace Agreement is attached hereto as Exhibit B, which is fully incorporated herein by reference.

51.    In Section 1.1 of the Dedicated Logistics/Transplace Agreement, Dedicated Logistics  (referred to as "CONTRACTOR") and Transplace (referred to as "BROKER") agreed, among other things, to the following:

> BROKER, from time to time in its sole discretion, may arrange for the transportation of shipments with CONTRACTOR for the Customers who shall be third party beneficiaries of CONTRACTOR'S obligations under this Agreement.

52.    Pursuant to the terms of the Dedicated Logistics/Transplace Agreement, Transplace arranged for Dedicated Logistics to transport Vizio's product from warehouses in California to the agreed upon destinations in California, as reflected in the Bills of Lading.

53.    Pursuant to the terms of the Dedicated Logistics/Transplace Agreement, Dedicated Logistics agreed to transport specific quantities of Vizio's product from warehouses in California to the agreed upon destinations in California, as reflected in the Bills of Lading.

54.    Pursuant to each Bill of Lading, Dedicated Logistics agreed to transport Vizio's product from warehouses in California to the agreed upon destinations in California within a specified "delivery window", as reflected in the Bills of Lading.

55.    Vizio is a "Customer" and third-party beneficiary, as defined in Section 1.1 of the Dedicated Logistics/Transplace Agreement.

56.    Vizio    was    an    intended    beneficiary    of    the    Dedicated Logistics/Transplace Agreement for each transport specific of quantities of Vizio's product, as reflected in each Bill of Lading.

57.    In entering the Dedicated Logistics/Transplace Agreement, it was a motivating purpose of Dedicated Logistics and Transplace for Vizio and other "Customers" to benefit from the Dedicated Logistics/Transplace Agreement.

58.     Dedicated Logistics breached the Dedicated Logistics/Transplace Agreement in several ways, including, but not limited to: (a) failing to transport Vizio's product from warehouses in California to the agreed upon destinations in California identified in each Bill of Lading; (b) failing to transport the specific quantities of Vizio's product identified in each Bill of Lading; (c) failing to deliver the specific quantities of Vizio's product within the "delivery window[s]" identified in each Bill of Lading; (d) stealing, concealing, and withholding information about the loss of Vizio's product in transit from warehouses in California to the agreed upon destinations in California identified in each Bill of Lading; and (e) failing to compensate Vizio for the loss, theft, conversion, and related failure to transport Vizio's product identified in each Bill of Lading.

59.     Dedicated Logistics' breaches of the Dedicated Logistics/Transplace Agreement have caused damage, and are continuing to cause damage, to Vizio and were a substantial factor in causing financial, reputational, economic, and non-economic harm to Vizio.

60.     Vizio is entitled to a monetary award of damages to be determined at trial, including interest accruing at the legal rate, as a third-party beneficiary of the Dedicated Logistics/Transplace Agreement.

**FIFTH CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

(Against Dedicated Logistics and DOES 1-10)

61.     Vizio re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 60, inclusive, as though set forth fully herein.

62.     California law dictates that every contract contains an implied covenant of good faith and fair dealing, which requires the parties to the contract to refrain from acts or omissions that may foreseeably and unfairly deprive a party of the benefits of the bargain.

63.     Vizio and Dedicated Logistics had in effect, at all relevant times, 33 agreements related to the transport of Vizio's product by Dedicated Logistics, as reflected in the Bills of Lading.

64.     The implied covenant of good faith and fair dealing required Dedicated Logistics to perform the terms and conditions of each Bill of Lading fairly and in good faith and to refrain from doing any act that would deprive Vizio of the benefits of the agreements.

65.     Vizio performed all of the conditions, covenants, and promises required of Vizio to be performed under the terms of the Bills of Lading, except those conditions, covenants, and promises that Vizio was excused from performing due to Dedicated Logistics' breaches.

66.     Dedicated Logistics unfairly interfered with Vizio's right to the benefits of the Bills of Lading and, thus, breached the implied covenant of good faith and fair dealing under the agreements by, among other things: (1) stealing Vizio's product that was the subject of each agreement; (2) failing to return Vizio's property; and (3) fraudulently modifying the Bills of Lading and relevant electronic records in an attempt to conceal Dedicated Logistics' thefts and breaches.

67.     As a direct and proximate cause of Dedicated Logistics' wrongful conduct, omissions, and overall breaches of the implied covenant of good faith and fair dealing, Vizio has suffered, and continues to suffer, damages in an amount to be determined according to proof at trial, and at least $2,426,805.07.

68.     As a result of Dedicated Logistics' wrongful conduct, omissions, and overall breaches of the implied covenant of good faith and fair dealing, Vizio has suffered and is continuing to suffer immediate and irreparable injury in that Dedicated Logistics' conduct is causing reputational harm to Vizio, including damaging Vizio's goodwill, above and beyond the substantial monetary damages Dedicated Logistics' breaches have inflicted.

## SIXTH CAUSE OF ACTION

**(Negligent Supervision, Hiring, and Retention)**

(Against Dedicated Logistics and DOES 1-10)

69.     Vizio re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 68, inclusive, as though set forth fully herein.

70.     At all times relevant hereto, Dedicated Logistics knew or should have known that its drivers, employees, and agents were capable of stealing Vizio's product.

71.     Dedicated Logistics owed a duty to Vizio to use reasonable care in the hiring, training, and supervision of its drivers, employees, and agents.

72.     Dedicated Logistics breached its duty of care in the hiring, retention, training, and supervision of its drivers, employees, and agents, who were unfit to be a provider of transportation services to Vizio and were inadequately trained or supervised. Dedicated Logistics knew or should have known that its drivers, employees, and agents had stolen, concealed, withheld, and aided in stealing, concealing, and withholding Vizio's product prior to and during the effective dates of the Bills of Lading. On information and belief, Dedicated Logistics knew or should have known that its drivers, employees, and agents committed prior criminal acts, including theft or conspiracy to steal, at the time they were hired and continuing through their retention and supervision.

73.     As a direct and proximate cause of Dedicated Logistics' breach of its duty to use reasonable care in the hiring, training, and supervision of its drivers, employees, and agents Vizio sustained substantial monetary damages in an amount of at least $2,426,805.07.

/ / /

/ / /

/ / /

## SEVENTH CAUSE OF ACTION

### (Fraud)

(Against Dedicated Logistics and DOES 1-10)

74.    Vizio re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 73, inclusive, as though set forth fully herein.

75.    Dedicated Logistics made fraudulent misrepresentations to Vizio in each Bill of Lading on the following dates: January 28, 2021; March 10, 2021; April 19, 2021; April 22, 2021; April 27, 2021; May 3, 2021; May 10, 2021; May 12, 2021; May 17, 2021; July 12, 2021; July 22, 2021; August 31, 2021; September 14, 2021; September 20, 2021; October 21, 2021; November 3, 2021 (two); November 8, 2021 (two); November 15, 2021; November 16, 2021; November 30, 2021; December 14, 2021; December 22, 2021; January 18, 2022; February 2, 2022; March 10, 2022; March 22, 2022; March 29, 2022 (three); April 12, 2022; and December 21, 2022.

76.    More specifically, Dedicated Logistics fraudulently modified each of the Bills of Lading to reflect a lower quantity of Vizio's product than what was scheduled to be transported as reflected in the Bills of Lading. On information and belief, Dedicated Logistics lowered the quantity of Vizio's product transported for each of the Bills of Lading and stole the difference in product from Vizio.

77.    Dedicated Logistics also modified the electronic records related to each of the transports identified in each Bill of Lading to reflect the same lowered quantities of Vizio's product.

78.    Dedicated Logistics made representations to Vizio that the Bills of Lading were true, but they were false. Dedicated Logistics knew that the representations in the Bills of Lading were false when it made them. Dedicated Logistics made these false representations to Vizio with the intent to deceive Vizio and with the intent that Vizio would rely on them. At the time these representations were made, Vizio was ignorant of the falsity of Dedicated Logistics' representations

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

BN 78899243v1

15

Case No. 8:23-cv-00519 HDV (JDEx)

SECOND AMENDED COMPLAINT

1    and believed them to be true.

2        79.   Dedicated Logistics is likely to have greater knowledge of the facts

3    surrounding its fraud since it attempted to conceal its misrepresentations to Vizio in

4    the fraudulently modified Bills of Lading and related electronic records.

5        80.   Vizio reasonably relied on these representations in that it believed that

6    each Bill of Lading was accurate. Had Vizio known the truth behind Dedicated

7    Logistics' misrepresentations regarding the transport of specific quantities of Vizio's

8    product identified in each Bill of Lading, it could have and would have taken swift

9    measures to protect Vizio from harm. Vizio was harmed as a result thereof. Vizio's

10   reliance on Dedicated Logistics' representations was reasonable in that Vizio had no

11   reason to question the above-referenced representations.

12       81.   Vizio has been damaged in an amount to be proved at trial, together with

13   interest thereon at the legal rate.

14       82.   Dedicated Logistics' acts of fraudulently modifying the Bills of Lading

15   and related electronic records were willful, wanton, malicious, and oppressive in that

16   they laid the groundwork for Dedicated Logistics to commit criminal acts (namely,

17   theft and conspiracy to commit theft) against Vizio over an extended period of time

18   by concealing Dedicated Logistics' criminal acts. Dedicated Logistics' acts justify

19   an award of punitive and exemplary damages, in an amount to be determined at trial,

20   to punish and serve as an example to deter others from such conduct.

21                          **EIGHTH CAUSE OF ACTION**

22          **(Negligent Interference with Prospective Economic Relations)**

23                   (Against Dedicated Logistics and DOES 1-10)

24       83.   Vizio re-alleges and incorporates herein by reference each and every

25   allegation set forth in Paragraphs 1 through 82, inclusive, as though set forth fully

26   herein.

27       84.   Vizio and various retailers were in economic relationships related to the

28   sale of televisions and home entertainment accessories. These economic relationships

1   would have resulted in future economic benefit to Vizio through additional sales and

2   increased revenue.

3         85.   Dedicated Logistics knew or should have known of Vizio's economic

4   relationships with various retailers related to the sale of televisions and home

5   entertainment accessories because it transported Vizio's product from the warehouse

6   in California to the retailers' distribution centers or hubs in California.

7         86.   Dedicated Logistics knew or should have known that these economic

8   relationships would be disrupted if Dedicated Logistics stole, concealed, withheld,

9   or aided in concealing and withholding product from Vizio and delivered less product

10   to the various retail distribution centers or hubs than identified in each Bill of Lading.

11         87.   Dedicated Logistics failed to act with reasonable care when it (1) stole,

12   concealed, withheld, and aided in stealing, concealing, and withholding product from

13   Vizio and (2) failed to hire, train, and supervise its drivers to prevent them from

14   stealing, concealing, withholding, or aiding in stealing, concealing, and withholding

15   product from Vizio.

16         88.   Dedicated Logistics engaged in wrongful conduct through its theft,

17   concealment, fraudulent misrepresentations related to, and loss of approximately

18   $2,426,805.07 worth of Vizio's product that was to be delivered to the various retail

19   distribution centers or hubs.

20         89.   Vizio's relationships with the various retailers were disrupted when

21   Dedicated Logistics failed to transport the specific quantities of Vizio's product

22   identified in each Bill of Lading.

23         90.   Vizio was harmed in that it provided less of its product to the retailers,

24   which decreased sales and revenue.

25         91.   Dedicated Logistics' thefts were a substantial factor in causing Vizio's

26   harm.

27   / / /

28   / / /

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE
BN 78899243v1
17
Case No. 8:23-cv-00519 HDV (JDEx)
SECOND AMENDED COMPLAINT

# NINTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Relations)**

(Against Dedicated Logistics and DOES 1-10)

92.     Vizio re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 91, inclusive, as though set forth fully herein.

93.     Vizio and various retail stores (including Best Buy) were in economic relationships related to the sale of televisions and home entertainment accessories. These economic relationships would have resulted in future economic benefit to Vizio through additional sales and increased revenue.

94.     Dedicated Logistics knew of Vizio's economic relationships with various retailers related to the sale of televisions and home entertainment accessories because it transported Vizio's product from the warehouse in California to the retailers' distribution centers or hubs in California.

95.     Dedicated Logistics engaged in wrongful conduct through its theft, concealment, fraudulent misrepresentations related to, and loss of approximately $2,426,805.07 worth of Vizio's product that was to be delivered to the various retail distribution centers or hubs.

96.     Through its theft, concealment, fraudulent misrepresentations related to, and loss of approximately $2,426,805.07 worth of Vizio's product, Dedicated Logistics knew that disruption of Vizio's economic relationships with various retail stores was certain or substantially certain to occur because less of Vizio's product would be provided, which would decrease sales and revenue.

97.     Vizio's relationship with the various retail stores was disrupted when Dedicated Logistics failed to provide complete deliveries of Vizio's product.

98.     Vizio was harmed in that it provided less of its product to the various retail stores, which decreased sales and revenue, as a result of Dedicated Logistics' failure to transport the specific quantities of Vizio's product identified in each Bill of

1  Lading.

2      99.    Dedicated Logistics' thefts, concealment, withholding, and aiding in

3  stealing, concealing, and withholding Visio's product were a substantial factor in

4  causing Vizio's harm.

## TENTH CAUSE OF ACTION

### (Violation of Carmack Amendment (49 U.S.C. § 14706))

(Against Dedicated Logistics and DOES 1-10)

8      100.   Vizio re-alleges and incorporates herein by reference each and every

9  allegation set forth in Paragraphs 1 through 99, inclusive, as though set forth fully

10 herein.

11     101.   Pursuant to Rule 8(d)(2), Vizio hereby pleads in the alternative a

12 violation of the Carmack Amendment (49 U.S.C. section 14706). Although

13 Dedicated Logistics' above-referenced acts occurred entirely within California and

14 each contract for transport involved the transportation of goods entirely within

15 California (specifically, Orange County and Los Angeles County), if the Court were

16 to find that the Carmack Amendment exclusively applied to all of the conduct

17 described in this complaint, Vizio hereby pleads a violation of the Carmack

18 Amendment in the alternative.

19     102.   Vizio pleads in the alternative that it provided its product to Dedicated

20 Logistics in good condition to be transported to their destinations.

21     103.   Vizio pleads in the alternative that Dedicated Logistics failed to deliver

22 Vizio's product to the agreed-upon destinations pursuant to the Bills of Lading.

23     104.   Vizio pleads in the alternative that it was harmed in an amount no less

24 than $2,426,805.07 (the value of the product that was not delivered).

## PRAYER FOR RELIEF

26     **WHEREFORE**, Vizio prays for relief as follows:

27     1.     For general damages in a sum of no less than $2,426,805.07;

28     2.     For three times the amount of actual damages sustained by Vizio

1   pursuant to California Penal Code section 496(c);

2       3.      For punitive damages and exemplary damages in amounts to be

3   determined according to proof;

4       4.      For reasonable attorneys' fees pursuant to California Penal Code section

5   496(c);

6       5.      For costs of suit pursuant to California Penal Code section 496(c); and

7       6.      For pre-judgment and post-judgment interest.

8

9   DATED:  October 20, 2023            **BUCHALTER**
                                       A Professional Corporation

10

11

12                                     By:  */s/ Matthew T. Drenan*
                                          DANA HOBART
13                                        MATTHEW T. DRENAN
                                          DANIEL C. SILVA
14                                        BRIAN SHAW
                                          Attorneys for Plaintiff
15                                        VIZIO, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) and Local Rule 38-1, Vizio hereby demands a jury trial as to each cause of action asserted in the Complaint.

DATED:  October 20, 2023

**BUCHALTER**
A Professional Corporation


By:   */s/ Matthew T. Drenan*
_____
DANA HOBART
MATTHEW DRENAN
DANIEL C. SILVA
BRIAN SHAW
Attorneys for Plaintiff
VIZIO, INC.